in the state penitentiary for a term of two years.

[1] The only ground upon which the appellant relies for a reversal of the judgment is that the evidence is insufficient to sustain his conviction of the offense of knowingly receiving and concealing stolen property. The testimony adduced by the state shows that on or about the 29th day of April, A. D. 1934, there was taken from the possession of F. P. Hutchenson, an agent of the Southern Pacific Railroad Company, 13 brass Gate valve stems, three brass Gate valves, and one Globe valve, the aggregate value of which was over $50. Said property was taken from the possession of Hutchenson without his consent. This property, or at least property of the same kind, size, number, and description was subsequently found in the possession of Morris Leach, a junk dealer, and was identified as that taken from Hutchenson. Leach testified that he purchased it from appellant and Lewis Gibbs; that just prior to the time he purchased the property the appellant approached him and told him, Leach, that he had some brass which he desired to sell; that it was at his home, and he gave Leach directions as to how to get to his, appellant's, home. When Leach arrived at appellant's home Lewis Gibbs was there and he, Leach, purchased the property from appellant; that when he paid the agreed price for the property the appellant demanded payment in change so that the two could divide the proceeds of said sale between themselves. If this testimony stood alone, it would present a most serious question as to whether it would sustain a conviction of the offense of which he was convicted, but appellant proved by one Aus Jackson that on or about the 29th day of April, A. D. 1934, Lewis Gibbs offered to sell to him, Jackson, the property alleged to have been stolen; that Lewis Gibbs had it in a sack and that the appellant was not present. He was not anywhere around. The appellant's mother testified that on Sunday Lewis Gibbs came to her home where she and appellant resided and brought the alleged stolen property in a sack and left it in her yard. That the next day when Leach, the junk dealer, came to her home Lewis Gibbs sold the property to Leach; that the appellant was there in the yard near the house but had nothing to do with making the sale. We think this is sufficient to show that Lewis Gibbs stole the property and that appellant received it from Gibbs knowing it to have been stolen and sold it to Leach. It is true that the state's case rests on circumstantial evidence, which the trial court realized, and fully instructed the jury on the law of circumstantial evidence.

The facts proven, the credibility of the witnesses, and the weight to be given to their testimony was within the exclusive province of the jury, and their finding is binding on this court, unless we can say as a matter of law that the facts and circumstances proven are insufficient to establish the appellant's guilt beyond a reasonable doubt. We believe that the facts and circumstances proven in the instant case present a stronger case against appellant than the facts in the case of Sears v. State, 106 Tex. Cr. R. 219, 291 S. W. 547, which was affirmed by this court.

No reversible error appearing in the record, the judgment of the trial court is in all things affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

### TULLY v. STATE.
### No. 17289.

Court of Criminal Appeals of Texas.

March 6, 1935.

Taylor & Irwin, of Dallas, and Alvin C. Owsley, of Denton, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

**318**

CHRISTIAN, Judge.

The offense is assault with intent to murder; the punishment, confinement in the penitentiary for nine years.

The opinion on a former appeal is found reported in 67 S.W.(2d) at page 272. The testimony adduced on the instant trial was substantially the same as that embraced in the record on the former appeal, except that the statement of facts in the present record shows an additional statement by the injured party, Eugene Smith, which we quote in part, as follows:

"I had been held up and robbed of some money prior to the time that this shot was fired out there that night. It was on the 18th night of May, 1932, that I was robbed. * * * Three men took part in that robbery. My brother George was with me at the time it happened. Just he and I lived there at that time. All three of those parties come into the house after so long a time and just one come in the house at first. I have identified one of the parties since that time, however, this defendant isn't the one I identified. It was dark in the house when these other men come in and it was dark on the outside, no light only a flash light. And also one of the men wore a mask and of course I couldn't tell nothing about him; he was a tolerably heavy set man. I suppose he was five feet seven or eight inches tall. The make-up of the man fills the bill pretty well, but I couldn't identify that (referring to appellant) as being the man at all. Yes, sir, I couldn't identify that as being the man at all, although his make-up fills the bill pretty good. When these three men left my place that night they robbed me they said something to me about the time they left. They marched us out in the road and to this mail box and walked right backwards and held guns on us until they got forty or fifty yards away and said 'If you ever have an attempt made to get us or our bunch caught we will kill you.' That is the last words they spoke. Between the time I was robbed and the time the shot was fired I have identified a man as being one of those who participated in the robbery, and he had been arrested and charged with the robbery. I got in the house a little before my brother did that evening and I was back in the kitchen part of the house and I heard a racket outside, something like that (indicating) on the house, and I just let it pass on and didn't go to investigate it. In a little bit my brother come in and this man was standing there on the porch and he talked there with him a little bit and he come on in the house and said 'There is a man out there inquiring for someone. Go out there and talk to him,' and so I went out there and this man was inquiring for a man by the name of Wilson and I said no, that I do not know anybody by that name around there. And we talked on a little bit and he said 'I am a man out of Oklahoma City' and he said 'I was directed here for a lot of whisky,' and I said, 'I guess you are in the wrong place again. We never fool with whisky,' and then he talked on a little bit. I do not know what he said and finally he said 'We are revenue men,' and he throwed a gun on us. That was one of the men that robbed me. He throwed a six-shooter on me. There is a little orchard right north of the house and the other men were hid out there and they run to the house. * * * I stated a while ago that I identified one of the parties that held me up. He was the one I talked to out on the porch. The other man was masked and I did not get a good look so I can't identify him."

Apparently the above-quoted testimony was introduced for the purpose of showing motive and malice. If it had been shown that appellant was one of the parties who participated in the robbery of the injured party on the night of May 18, 1932, the state's case would be stronger. However, the witness failed to identify appellant as one of the parties who had theretofore robbed him. He was only able to say that one of the men corresponded in size with appellant. Appellant testified that he had never been to the injured party's house before October 13, 1932, the date he was alleged to have committed the assault with intent to murder. Under the circumstances, we think the additional testimony of no cogency, and that the case, on its facts, is in the same attitude as it was on the former appeal. We deem it unnecessary to again set out the testimony, but refer to the former opinion, in which, after setting out the testimony, Judge Lattimore, speaking for the court, used language as follows: "The court submitted the case properly upon the law of circumstantial evidence, and in such case, as said by the court in its charge, it is not enough that the circumstances in evidence coincide with and render probable the guilt of the accused, but they must exclude beyond a reasonable doubt every other reasonable hypothesis. We have searched for evidence so excluding every other reasonable hypothesis except that this appellant either alone or acting with Taylor fired a shot through the window in the darkness with malice, and fail to find it."

In view of the fact that we have reached the conclusion that the evidence is insuffi-

cient, we deem it unnecessary to decide whether appellant's objection to the reception of the additional testimony should have been sustained.

The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.